# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 21-307** |
| **RODNEY MARTINEZ** | : | |

## DEFENDANT RODENY MARTINEZ'S SENTENCING MEMORANDUM

**ZUCKER STEINBERG & WIXTED, P.A.**
**Saul J. Steinberg, Esq.**
**415 Federal Street**
**Camden, NJ 08103**
**(856) 365-0080**
**ssteinberg@zswlaw.com**

Dated: May 3, 2022

## **INTRODUCTION**

Rodney Martinez is a 50-year-old man with no prior criminal record who, on December 7, 2021, entered guilty pleas pursuant to a plea agreement. At the outset, Mr. Martinez does not suggest that there is anyone other than himself to blame for commission of the offenses to which he pled. He also recognizes that he is responsible for the pain his wife and family endure and will continue to experience from his conviction and sentence.

However, it is for the Court to consider all of the relevant factors in arriving at its sentence. The question becomes "how much is enough" for no more is statutorily permissible. Reasonable minds may differ on that quantum, but the sentencing philosophy is that a sentencing Court may not impose a sentence which is greater than the minimum which will satisfy the § 3553 factors.

In its sentencing memorandum, the Government stresses the effects of bribery and related crimes on the public and also in the societal beliefs of the integrity of our institutions. Also, Mr. Lappen addresses the effects to SEPTA and its employees from the events of this case. These are appropriate matters to be considered. We all know of the costs and harm that society and the community bear when insurance fraud, hijackings, intellectual property and identity theft occur. The Government's position reflects that a civilized society must hold those who perpetrate those offenses be held accountable.

But to what extent? In arriving at that decision, the Court must consider general and specific deterrence and the other factors set forth by the Government. The Court must also consider the history, character and condition of the defendant and his family in order to strike an appropriate balance.

We recognize that the task in this case will be difficult. It is hoped that this memorandum will assist the Court in making its determination. No one can doubt in anyway the profound effect

that this case has had, and will continue to have, on Tara Martinez, who, as stated in the Presentence Report, feels that she, and her myriad medical conditions, are to blame for what happened. See PSR ¶ 7.  She is not to blame, nor are the citizens of Pennsylvania, or SEPTA. But at p. 12 of its memo, Mr. Lappen correctly states that there is nothing in Rodney's background which was the cause of Mr. Martinez' participation in the events of this case. Mr. Lappen states that he (defendant) should have known better. See Gov't SE Memo at p.12. And to an extent he is right. So I ask this question. If Rodney and Tara did not live through the debilitating illnesses and conditions from which she suffers, and experienced the financial stresses that flowed from them, what would Rodney have said when first approached by Mr. Abell who introduced him to the scheme? Would the better sense that Mr. Lappen describes have prevailed?  Would Rodney have simply said no.

The fact of the matter is that we all must play the hands we are dealt.  Rodney is responsible and accountable for the manner in which he chose to play his hand. But how much more must he pay than losing his career [1] and at his stage in life being a convicted felon? Surely he will live with the disappointment and pain he has brought to his family. To some that might not matter. But from all that is before the Court, to Rodney, it matters deeply.

## THE PLEA AGREEMENT

Pursuant to a plea agreement, on December 7, 2021, Mr. Martinez entered pleas of guilty to the charges for which he is to be sentenced. At that time stipulations were entered. However, this Court retains discretion in sentencing Mr. Martinez since the parties' terms and stipulations under the plea agreement are not binding upon this Court.

---

[1] The PSR states that he was terminated from his position.  The fact of the matter was that during the pendency of this matter, Mr. Lappen and I discussed his employment status.  Mr. Martiniez thereafter resigned his position.

The parties have agreed and stipulated that as of the date of the plea agreement that the defendant, Mr. Martinez has demonstrated acceptance of responsibility for his offenses, making him eligible for a two-level downward adjustment under U.S.S.G. § 3E1.1(a). The Government and the defendant have also agreed and stipulated that as of the date of his plea agreement the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the Government of his intent to plead guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources on other matters; thereby earning an additional level downward adjustment under U.S.S.G. § 3E1.1(b).

Although the parties have agreed not to seek any upward or downward departures (at step II of the sentencing), Mr. Martinez moves for a reduced sentence pursuant to the relevant factors outlined in 18 U.S.C. § 3553(a)(1) and (2).

It should also be noted that Mr. Martinez has remained at liberty pursuant to the unsecured bond. He has complied with all conditions and has maintained employment. He has continued to provide for his family.

**LEGAL FACTORS BEARING UPON SENTENCING**

In 1982, Justice Lewis F. Powell, Jr., recognized that "a consistency produced by ignoring individual differences is a false consistency." Eddings v. Oklahoma, 455 U.S. 104, 112 (1982). The Supreme Court adopted this sentiment in the context of Federal Criminal Sentencing in United States v. Booker, holding that the trial court has substantial discretion to consider individual circumstances of a defendant when imposing a sentence. United States v. Booker, 543 U.S. 220 (2005) Post-Booker, the Supreme Court has consistently held that a District Court must not presume that a sentence within the calculated Guideline range is reasonable. Instead, the

4

sentencing court "subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure" and exercises its substantial discretion in imposing a sentence that takes into consideration, but is <u>not</u> driven by the calculated guidelines range. Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007) (Steven, J., concurring). Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007) holding that a District Court may not presume that the guideline range is reasonable; United States v. Vampire Nation, 451 F.3d 189, 196 (3d Cir. 2006).

The Third Circuit has set forth a three step process that district courts must now follow in determining an appropriate sentence:

> In this context, post-Booker precedent instructs district courts to follow a three step sentencing process. United States v. King, 454 F.3d. 187 (3d Cir. 2006).
>
> 1. Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker. See id. at 196; see also Cooper, 437 F.3d. at 330.
>
> 2. In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and further take into account our Circuit's pre-Booker case law, which continues to have advisory force. King, 454 F. 3d at 196.
>
> 3. Finally, they are required to "exercise their discretion by considering the relevant [§ 3553(a)] factors" id. at 194 (quoting Cooper, 437 F.3d at 329), in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, (3d. Cir. 2006). Thus, sentencing courts must continue to calculate the Sentencing Guideline range, then exercise their discretion under § 3553(a) factors in imposing a not greater than necessary final sentence.

I.  **ADVISORY GUIDELINES SENTENCING RANGE**

As set forth in the Presentence Report, under ¶ 61, the total offense level for Mr. Martinez 25. Under ¶ 64, the total criminal history score is zero.

II. **SECTION 3553(A) SENTENCING FACTORS**

As noted above, the calculation of the guidelines range does not end the Court's inquiry. In the post-Booker era, the sentencing court does not focus solely on the guidelines when imposing a sentence, but is required to impose a reasonable sentence that considers all of the factors enumerated in § 3553(a) which are:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed-
   (a) to reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense;
   (b) to afford adequate deterrence to criminal conduct;
   (c) to protect the public from further crimes of the defendant;
   (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment via the most effective manner;
3. the kinds of sentences available;
4. the kinds of sentence and the sentencing range established by the Sentencing Guidelines;[2]
5. any pertinent policy statements;
6. the need to avoid unwarranted sentence disparities among Defendant with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victim of the offense.

18 U.S.C. § 3553(a).

In United States v. Cooper, 437 F.3d 324 (2006), the Third Circuit held that, post-Booker, sentencing courts must give "meaningful consideration" to the factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence. Id. at 329. As the Supreme Court stated in Kimbrough v. United

---

[2] Although this is a factor for the sentencing court to consider, the court must consider whether a within-guidelines sentence is "greater than necessary" to serve the objectives of sentencing. See Kimbrough, 55 U.S. at 101, Gall, 552 U.S. at 46, 49.

States, 128 S.Ct. 558 (2007), the sentence should be **"sufficient, but not greater than necessary"** to accomplish the goals of sentencing. Id. at 570. In United States v. Gall, 128 S.Ct. 586 (2007), the Court stated that each defendant should be treated individually and all the section 3553(a) factors should be considered in determining an appropriate sentence. Id. at 597-98.[3] The Third Circuit similarly instructs that "district courts must make sentencing determinations on an individualized basis." United States v. Tomko, 562 F.3d 558, 574 (3d Cir. 2009). In Unites States v. Tomko, for example, the Third Circuit recently affirmed the sentence of home detention for a defendant convicted of tax evasion in violation of 26 U.S.C. § 7201. The Government argued, in part, that the district court failed to consider the need for general deterrence, and that detention in the home was unreasonable under the circumstances. The district court rejected the Government's contentions, instead finding that the district court's reasons for a downward variance were logical and consistent with the factors set forth in 18 U.S.C. § 3553. Tomko, 562 F.3d at 571. Specifically, the court stated that the variance "took into account Tomko's negligible criminal history, his employment record, his community ties, and his extensive charitable works as reasons for not incarcerating Tomko." Id. the district court made a "thoughtful attempt to tailor the off-the-rack guidelines recommendations into a sentence that fits Tomko personally." Id. at 575.

      Furthermore, the Supreme Court post-Booker has consistently made clear that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range

---

[3] In Gall, an ecstasy distribution case, the district court rejected the Sentencing Guidelines range of 30 to 37 months imprisonment, and instead imposed a probation-only sentence. In upholding the district court's sentence and rejecting a presumption that a Guidelines sentence is reasonable, the Supreme Court recognized that probation is appropriate in some cases even if the Sentencing Guidelines range would otherwise direct the court to impose a term of imprisonment. Further, the Supreme Court explicitly stated that a non-custodial sentence, such as probation, serves as both punishment and a general deterrent because it substantially restricts an individual's liberty and serves punitive purposes. Id. at 595 ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'") (citations omitted).

is reasonable." Nelson v. United States, __ U.S. __, 129 S. Ct. 890, 892 (Jan. 26, 2009); see also, Rita, 127 S. Ct. at 2465. The touchstone of reasonableness, rather, is whether a sentence reflects a rationale and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a). See Tomko, 562 F3d at 568, citing United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (en banc). On appeal, a court will validate a sentence (not procedurally flawed) outside of the advisory Guidelines range imposed for reasons "logical and consistent with the factors set forth in section 3553(a)." See Cooper, 437 F.3d at 330.

The Third Circuit clearly instructs district courts to "exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated by the Guidelines." United States v. Olhovsky, 562 F.3d 530, 547 (3d Cir. 2009). Furthermore, as the Third Circuit recently observed, "it is not **severe** punishment that promotes respect for the law, it is **appropriate** punishment." Olhovsky, 562 F. 3d at 551 (emphasis on original). See, e.g., United States v. McFarlin, 535 F.3d 808, 810-12 (8th Cir. 2008) (sustaining downward variance in narcotics case to a three-year probationary sentence based on defendant's ag (56), fact that defendant had undergone multiple heart surgeries, that he suffered from sever coronary artery disease, asthma, and other conditions, as well as post-traumatic stress disorder and weighed 310 lbs.).

As noted in the Presentence Report, Mr. Martinez is 50 years of age. He is a military veteran who throughout his life maintained steady employment. He has provided for his family and has been extremely devoted to caring for his wife throughout the arduous medical conditions she has experienced and continues to experience (as set forth infra). She describes him as her best friend.

As expressed in the Presentence Report, Rodney does have some health issues, but they are certainly not disabling. As Tara states, he would never use those issues as an excuse and generally does not complain about his health.

### MR. MARTINEZ'S FAMILY CIRCUMSTANCES

Post-Booker courts have found family circumstances to be one of the § 3553(a) factors to be appropriately considered in determining a sentence under the advisory guidelines regime. See Rita, 551 at U.S. 364 (Stevens, J., concurring) ("Matters such as age, education, mental or emotional condition, medical condition, employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines but are matters that § 3553(a) authorizes the sentencing Judge to consider") (emphasis added).

Under this rationale, several courts have specifically relied on a defendant's family circumstances in determining an appropriate sentence. U.S. v. Diambrosio, Criminal No. 04-66, 2008 U.S. Dist. LEXIS 20963, at* 11 (E.D. Pa. March 17, 2008).

Part C. of the Presentence Report describes Rodney's family circumstances. He certainly did not grow up in the lap of luxury. But it appears that he had the support of family while growing and was given appropriate guidance and support, even though from time to time finances required that he live with other family members. One would surmise that the lessons he learned from his family positively influenced him to care and provide for his family as he has.

The Presentence Report details the serious ongoing medical challenges his wife faces on a daily basis. She suffers for multiple sclerosis which was diagnosed in 2001 after two years of ongoing symptomology. She was no longer able to work full time and in 2007, after she was out

of work for a period of time, they lost their family home. They and their children moved in with family until they were able to save enough for an apartment.

They lived in an apartment for about 5 years. During that time Tara experienced ongoing symptoms. New therapies/mediations offered some relief but with significant side effects. She could only work part-time and illness caused her to call out from work often.

In 2014, Tara was put on a new medication. But she was experiencing relapses and in 2014 they were able to purchase a home. However in 2015, she relapsed again and while driving was involved in a serious car accident (totaling her car) which led to her doctor opining that she could no longer work. Since two of her children were out of the house and she could no longer work, she experienced significant depression. This period was emotionally painful for Rodney. Not only was it hard to watch his wife suffer, and to feel powerless to help her, but he also feared they would again lose the house they just purchased. Without his wife's income, Rodney was not sure they would be able to keep a roof over their heads. His wife, who had always been a source of support and encouragement, was suffering in new and unique ways. He felt alone. The weight of these responsibilities broke him and he became involved in the instant offense.

In April of 2021, Rodney resigned form SEPTA which ended the family medical coverage. Later that month Tara was diagnosed with thyroid cancer and in July of 2021, the thyroid tumor was successfully removed. She is now on new medical therapy which she undergoes in a hospital setting. The treatment results in severe immunocompromise which, in this day and age is a scary proposition. Tara is in a high-risk category for suffering the worst effects of Covid, and consequently is limited in her daily activities. Rodney protects her from infection by ensuring she has everything she needs in the home so that she need not enter into high risk situations. This has

become even more important as the government has relaxed Covid related mandates that enabled the immunocompromised to move about more freely.

Rodney has been there for her, truly for better and worse and in sickness and in health. As stated above, these circumstances, difficult they may be, do not absolve him. He does not get a pass. Those are the cards he was dealt, and it was for him to play them. SEPTA did not cause these challenges. Yet how do years and years of health and financial stresses and crises affect one's resolve? Having lost their home on 2007, what was the effect on Rodney's otherwise good sense and judgment when faced with more relapses, to the point where his wife was no longer able to work?

The Government appropriately discusses the ongoing nature of Mr. Martinez' involvement in the events. The Court must take that into consideration; it is not to be swept under the rug. But we submit that it should not be the overarching consideration in sentencing. Rather, we ask the Court and the Government to consider just how much Rodney knows and must deal with the additional pain, distress, humiliation and suffering his action has caused in the determination of how much is enough.

## **MR. MARTINEZ IS NOT A RISK FOR RECIDIVISM**

Other § 3553 factors the Court must consider are "the need for the sentence imposed to: reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment via the most effective manner". 18 U.S.C. § 3553(a)(2). In fashioning a sentence that adequately fulfills § 3553(a)(2)(B)'s goal of "affording adequate deterrence to the criminal conduct," the Third Circuit has noted that "it is not severe

punishment that promotes respect for the law, [but] appropriate punishment." Olhovsky, 562 F.3d at 547.

In considering these factors, both the age of an offender and his first-time offender status are predictors of the likelihood of recidivism. The Sentencing Commission itself has recognized that recidivism rates decline dramatically with age, and first-time offenders are the lease likely criminal to reoffend. See U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at Ex. 9 (May 2004) [hereinafter Measuring Recidivism Report]; U.S. Sentencing Commission, Recidivism and the "First Offender," at 13-14 (May 2004) [hereinafter First Offender Report]. While a 20-year-old defendant in Criminal History Category I has a 29.5% chance of reoffending, a defendant over 50 years old with the same criminal history has only a 6.2% chance of reoffending. Measuring Recidivism Report at Ex. 9. With respect to first-time offenders, the Sentencing Commission has found that offenders with zero criminal history points have a recidivism rate of just 11.7%, while offenders with just one criminal history point have double the recidivism rate at 22.6%. First Offender Report at 13-14.

A number of courts have taken both age and first-time offender status into account when fashioning an appropriate sentence under 18 U.S.C. § 3553(a). See, e.g., United States v. Darway, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding sentence in child pornography case as reasonable where district court granted downward variance on the basis of defendant's first-time offender status); United States v. Hamilton, 2009 WL 995576, at *3 (2d Cir. Apr. 19, 2009) (holding that "the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); United States v. Holt, 486 F.3d 997,1004 (7th Cir. 2007) (affirming a below-guidelines sentence where the district court's only reason for the

variance was that the defendant's age made it unlikely that he would again be involved in another violent crime); United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants, like Cabrera, "with zero criminal history points are less likely to recidivate than all other offenders); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (explaining that a sentence of 262 months – as opposed to a guidelines sentence of 324-405 months – constituted "sufficient, but not excessive, deterrence" for 44 year old defendant); United States v. Nellum, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (explaining that age of offender is relevant to § 3553(a) analysis, even if not ordinarily relevant under the guidelines, and granting variance to the 57 year old defendant).

Ain addition to these analyses, common sense tells us that Rodney is highly unlikely to reoffend. All indications from the Presentence Report is that Rodney will be deeply troubled by the effects this conviction will have on his wife and family and that such pain will keep him from recidivism.

## **CHARACTER LETTERS**

We are submitting 3 letters from family which attest to Rodney's character. We submit that nobody knows Rodney better. The traits of Rodney's expressed in these letters are further supported by his work and life history as described in the Presentence Report. His behavior following his arrest further attests to his inclination to do the right thing. Throughout his life, Rodney has not only done the right thing, he has gone beyond expectations in his service to others. Rodney's beginnings were modest and humble, but his family taught him the value of hard work and service. Rodney served admirably in the military, accepting the risk to his own life to defend his country. After an honorable discharge from the service, he went on to have several jobs before beginning with SEPTA in 1995. He then was promoted four times at SEPTA, but even after

spending over two decades in their employ, Rodney never earned more $120,000. Combined with his wife's earnings, Rodney barely managed to raise his family and take care of his wife's special needs. He was always teetering on edge of ruin, as happened in 2007 when his wife first became too ill to work and they lost their family home.

Perhaps more importantly for Rodney, his children describe the father he was, and is, to them. He was there for them in times of need and in times of happiness. He provided emotional support and care for them. It is hoped that the descriptions in those letters will be his legacy when all is said and done.

## **CONCLUSION**

I am hopeful that Your Honor will recall the manner in which Rodney presented at the plea hearing. Also, I invite the attention of the Court to Mr. Lappen's descriptions of his interactions with Mr. Martinez. At p.13 of his Sentence Memorandum, Mr. Lappen states that the Government's recommendation below the guidelines reflects its view of Mr. Martinez' history and character.

In addition to those comments, we suggest that the Court not being bound by those recommendations, may appropriately sentence impose a lower sentence. For example if incarceration is to be imposed, is the deterrent effect reached by the fact that the Court imposes a period of incarceration than the length imposed?

We also note that the Government did mention that Tara Martinez has medical problems. It is not incumbent on the Government to discuss those problems at length. But it is appropriate for the Court to factor those problems in the calculus. Her conditions are not just problems. They

are severe, pervasive, life-altering and continuing. They are both physical and emotional. Experience tells us that emotional conditions may well be more debilitating than physical ailments.

In light of Mr. Martinez's age and lack of criminal records, his family circumstances, it is most respectfully requested that the Court consider the sentencing factors under 18 U.S.C. § 3553(a) and sentence Mr. Martinez to either a term of Probation, or, in the alternative, to a period of House Arrest.

Respectfully submitted,

ZUCKER STEINBERG & WIXTED, P.A.

 */s/ Saul J. Steinberg*
Saul J. Steinberg, Esquire
415 Federal Street
Camden, NJ 08103
(856) 365-0080
ssteinberg@zswlaw.com
*Attorneys for Defendant, Rodney Martinez*

## CERTIFICATE OF SERVICE

I, Saul J. Steinberg, hereby certify that a true and correct copy of the above Defendant's Sentencing Memorandum has been filed via ECF and served via email upon:

>Luis D. Lappen
>Deputy United States Attorney
>615 Chestnut Street Suite 1250
>Philadelphia, PA 19106
>*Email: Louis.Lappen@usdoj.gov*

Respectfully submitted,

This 3rd day of May, 2022.

>*/s/ Saul J. Steinberg*
>Saul J. Steinberg, Esquire
>ZUCKER STEINBERG & WIXTED, P.A.
>415 Federal Street
>Camden, New Jersey 08103
>ssteinberg@zswlaw.com
>T: (856) 365-0080